DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

DURING THE YEAR 1911.

---

## Frank Giehl, Jr., Appellee, v. Christian Winkler, Appellant.

### Gen. No. 5,375.

1. SLANDER AND LIBEL—*what not competent upon question of malice.* An independent slander, that is to say, slanderous words not in substance or effect the repetition of the slander for which the action is brought, is not competent upon the question of malice.

2. VERDICTS—*when not cured by remittitur.* A verdict which appears to have resulted from passion and prejudice cannot be cured by *remittitur.*

Appeal from the Circuit Court of Woodford county; the Hon. COLOS-TIN D. MYERS, Judge, presiding. Heard in this court at the April term, 1911. Reversed and remanded. Opinion filed October 13, 1911.

OSMAN RIDGELY, for appellant.

THOMAS KENNEDY and E. J. ABERSOL, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Each count of the declaration charged that appellee had a good reputation and had a wife and a child; and that Emma Reising was unmarried and, on July 2,

1905, gave birth to an illegitimate child. Each count set up a different set of words, alleged to have been spoken by appellant of appellee which charged that appellee was the father of said illegitimate child, and each count charged that appellant thereby meant to accuse appellee of having committed adultery with said Emma Reising. Defendant pleaded the general issue. There was a trial and a verdict of not guilty and a new trial was awarded, and, on the second trial, appellee had a verdict, assessing his damages at $1950. He remitted $950 therefrom and had judgment for $1,000 from which defendant below appeals.

The proof showed that appellant did speak words concerning appellee, which charged appellee with being the father of the child. After appellee had proved one such conversation by his first witness, he was permitted to prove by the same witness a conversation with appellant after this suit was begun, in which appellant said:

"That man Giehl is a bad man: he has had trouble of that kind before; I have been doing a little detective work over at Peoria, and I found some eight or thirteen cases where he had instituted suits for damages, standing in with some girls, alleging somebody was the father of the child; Giehl had grown rich out of the business; he had hunted up the records of Peoria."

The witness continued in the same answer:

"That was substantially the statement; whether it was at the time he was served with subpoena or not I cannot tell. He impressed it upon me that Mr. Giehl was a bad man, carrying on this kind of business, through people, and Winkler had discovered these things."

Appellant then moved to exclude this answer as incompetent, immaterial and irrelevant, and this motion was denied and appellant excepted. Appellee contends that this evidence was competent as tending to show

malice; and that, if otherwise incompetent, yet that which preceded showed that the conversation was connected with this charge. In any action for slander, after proof has been introduced of the cause of action stated in the declaration, it is competent to show that the slander has been repeated, even after the commencement of the suit. Hatch v. Potter, 2 Gilm. 725; Dexter v. Harrison, 146 Ill. 169. But it is implied in the latter case that it was incompetent to prove that defendant had insulted plaintiff on the streets, such insults not being a repetition of the slanderous words. In Ball v. Evening American Publishing Company, 237 Ill. 592, the court refused to pass upon the question whether subsequent publications of independent libels, differing in character from the first, not connected therewith and not counted upon, may be proven for the purpose of showing malice; but the court there cites, with approval, Root v. Lowndes, 6 Hill 518, the reasoning of which is against the admission of such testimony. On principle, it seems to us that evidence of an independent slander ought not to be admitted. Defendant may well be presumed not to have come to the trial prepared to meet such proof. He might not be prepared with the witnesses by whom he could prove that he was not at the place alleged at the time named, or that he did not speak the words alleged, or that the words were true. The answer above quoted did not imply that appellant was the father of this child, nor did it profess to connect appellant in any way with Emma Reising. What it did charge was that appellee had instituted numerous suits at Peoria in behalf of young women who were the mothers of illegitimate children to recover damages therefor, and that by promoting such suits appellee had grown rich in that business. As the proof showed that appellee was a hardware merchant, instead of a lawyer, the charge meant that he was engaged in the unlawful promotion of suits

of that character. This was entirely different from the charge alleged in the declaration and was well calculated to aggravate the damages which the jury might award. If the Statute of Limitations had not run against an action for the speaking of the words above quoted then appellant would still be liable to another award of damages in another action for the speaking of those words, and thus be exposed to the risk of two awards of damages for the same words. If the statute had run, then, by the admission of those words in evidence here, appellee was virtually given an opportunity to recover damages in this action for another slander not declared upon and which was outlawed. The opportunity for such unjust results seems to us to demonstrate that the evidence was incompetent. As to the actual damages caused to appellee by the slanders declared upon, appellee testified that on account of this charge he had lain awake till three o'clock A. M. twenty-five nights and till midnight one hundred nights; that certain customers of his in his hardware business had ceased to trade with him and he suspected that this was because of these charges, though no one had ever told him so; and that another hardware store had been opened in his village. The damages awarded were chiefly punitive and may well have been affected by the testimony above set out. But appellee contends that the testimony of said first witness connected this conversation with the prior conversation, wherein the charge sued upon was made. It is true that before the witness made the answer above quoted he was asked if he had a conversation with appellant afterwards about this matter, and he answered that he did, after the filing of the declaration. This justified the court in permitting the question to be answered. But, when the answer came in, it was very obvious that it had no relation to Emma Reising nor to the charge made months before that appellee

was the father of her illegitimate child. The words in the answer, "he has had trouble of that kind before," could not make the new charge contained in this answer competent, when it appeared that in fact it had no relation to the charge about Emma Reising. We are of opinion that it was error to refuse to exclude the answer, and that the large verdict rendered may very well have been in part caused by the proof that appellant had charged appellee with getting rich out of the business of promoting suits by unmarried mothers against the alleged fathers of their offspring. On a rehearing appellee asks us to require another *remittitur,* rather than to reverse and remand the cause for another trial, but we conclude that the verdict appears to be so far affected by passion and prejudice that the cause should be submitted to another jury.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*